IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

SANTOS MODESTO ORELLANA-
ESCOBAR,
　　　　　　*Petitioner*,

v.

TODD M. LYONS, *et al*.,
　　　　　　*Respondents*.

1:26-cv-349-MSN-LRV

ORDER

Santos Modesto Orellana-Escobar ("Petitioner") has filed a Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2241, in which he asserts that he has been illegally detained by the U.S. Department of Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE"). ECF 1.

Petitioner is currently detained at the Farmville Detention Center in Farmville, Virginia. He has sued Todd M. Lyons, ICE's Acting Director; Joseph Simon, the Acting Field Office Director of ICE Enforcement and Removal Operations ("ERO"); the DHS Secretary; Pamela Bondi, the Attorney General; and the ERO (collectively "Federal Respondents"). He has also sued Jeffrey Crawford, the warden of the Farmville Detention Center.

In response to the Court's Order of February 12, 2026 (ECF 2), Federal Respondents opposed the Petition ECF 4. Upon consideration of the Petition and the parties' briefing thereto, the Court will GRANT the Petition.

## I.    BACKGROUND

Petitioner is a citizen of El Salvador. ECF 4-1 ¶ 5.  In 2013, Petitioner received a final order of removal and was physically removed from the United States. *Id*. ¶ 6. In September 2015,

Petitioner was encountered by DHS personnel after re-entering the United States by crossing over the southern border with Mexico and was issued a Form I-871, Notice of Intent/Decision to Reinstate Prior Order. *Id*. ¶ 7. Petitioner claimed a fear of returning to his country and was traveling with family who were not subject to reinstatement of a removal order, so Petitioner was released on an order of recognizance. *Id*. Subsequently, an asylum officer determined that Petitioner had a reasonable fear of returning to El Salvador and so Petitioner was placed in withholding only proceedings before an Immigration Judge. *Id*. ¶ 8.

In July 2017, Petitioner was taken into civil immigration custody pending the outcome of his withholding only proceedings. *Id*. ¶ 9. Petitioner was subsequently granted bond by an Immigration Judge following the class action order in *Diaz v. Hott*, 297 F. Supp. 3d 618 (E.D. Va. 2018), in which Judge Brinkema determined that noncitizens subject to reinstated removal orders who were in withholding-only proceedings were detained under 8 U.S.C. § 1226. *Id*. ¶ 9; ECF 4 at 10 (recognizing Section 1226(a) bond). The Fourth Circuit affirmed Judge Brinkema's decision in *Diaz*. *Guzman Chavez v. Hott*, 940 F. 3d 867 (4th Cir. 2019). In June 2021, the Supreme Court reversed, determining that mandatory detention under 8 U.S.C. § 1231 applied. *Johnson v. Guzman Chavez*, 594 U.S. 523 (2021).

Following the Supreme Court's ruling, Federal Respondents did not act to revoke Petitioner's bond. Only on October 10, 2025, more than four years later, did Federal Respondents take Petitioner into civil immigration custody under circumstances that are unknown to this Court. An Immigration Judge denied Petitioner's applications for relief from removal on January 23, 2026, and Petitioner timely appealed to the Board of Immigration Appeals. ECF 4-1 ¶ 10; ECF 8-1.

2

## II.   DISCUSSION

Although the Petition framed Petitioner's detention as a matter of whether it was governed by Section 1225 or Section 1226, Federal Respondents have asserted that Petitioner is actually subject to mandatory detention pursuant to Section 1231 and that his current four-month detention is permissible under *Zadvydas v. Davis*, 533 U.S. 678 (2001). ECF 4 at 11.

Undoubtedly, Petitioner is currently detained pursuant to Section 1231(a). However, the issue with his detention is not with the length of his current detention or the length of his withholding-only proceedings, but rather with the fact that Petitioner was previously released on bond and the manner in which Federal Respondents revoked that bond and re-detained Petitioner. Federal Respondents relegate the problem to a single footnote, stating that because Petitioner was not entitled to a bond hearing in the first place, the Federal Respondents' actions "cannot violate the bond procedures when they are not applicable." *Id*. at 11 n.4.

But this is an over-simplification of the matter. "Freedom from . . . physical restraint . . . lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. "Civil detention, including that of a non-citizen, violates due process in the absence of a 'special justification' sufficient to outweigh one's 'constitutionally protected interest in avoiding physical restraint.'" *Duong v. Kaiser*, 800 F. Supp. 3d 1030, 1037 (N.D. Cal. 2025). And "a noncitizen at liberty has a greater interest in remaining free from detention than does a noncitizen who is currently or was recently detained." *Id*. ("[T]here is a 'meaningful distinction between a challenge to an initial period of detention . . . and a challenge to *re-detention* after a court has previously granted released on bond pending immigration proceedings.'"); *Pineda-Berrios v. Lyons*, 2026 WL 384159, at *6 (E.D. Va. Feb. 11, 2026) (quoting *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032

(N.D. Cal. 2025)) ("[A]fter that individual is released from custody [he] has a protected liberty interest in remaining out of custody.").

Here, Petitioner was released on bond pursuant to Section 1226(a) for more than seven years. The fact that such bond was eventually determined to be impermissible is of no moment, because "an individual may have a protected liberty interest in maintaining his freedom even where that freedom is contrary to law." *Duong*, 800 F. Supp. 3d at 1039 (collecting cases). The magnitude of that interest in continued freedom must be recognized even though Petitioner is subject to mandatory detention under Section 1231. *See id*. (citing *Perera v. Jennings*, 598 F. Supp. 3d 736, 739 (N.D. Cal. 2022)) (observing that courts "have found that individuals subject to detention under section 1226(c) have a protected interest in remaining at liberty even though section 1226(c) detention is mandatory"). And it is "appropriate to consider" Federal Respondents' acquiescence in all of this—as after Petitioner was released in 2018 "based on criteria that he did not pose a flight risk or a danger to the community," and after the Supreme Court handed down its 2021 ruling in *Guzman Chavez*, Federal Respondents made no effort to re-detain Petitioner but rather "chose to allow [Petitioner] to continue [on release] for [four] years while he []integrated into the community." *Carballo v. Andrews*, 2025 WL 2381464, at *5 (E.D. Cal. Aug. 15, 2025); *see also Duong*, 800 F. Supp. 3d at 1039 (citing *Perera*, 598 F. Supp. 3d at 744) ("The fact that Perera was six years overdue for immigration did not diminish his liberty interest, but increased it. The same is true for Duong.").

The question for the Court then is what procedural process is due to protect Petitioner's liberty interest. The Court considers the usual *Matthews v. Eldridge* factors, including: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or

substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. 424 U.S. 319, 335 (1976).

The first factor is apparent from the above discussion. As to the second factor, the risk of erroneous deprivation of liberty that the Court considers is the risk that Petitioner's detention is contrary to the purposes of civil immigration detention. There are two such permissible purposes: to mitigate flight risk or protect the community from harm. *Zadvydas*, 533 U.S. at 690. Individualized bond hearings assess whether detention is necessary to serve those purposes. *Duong*, 800 F. Supp. 3d at 1040. But these objects persist even where a person is subject to mandatory detention pursuant to Section 1231(a), *Zadvydas*, 533 U.S. at 690, and in such circumstances, Federal Respondents may still release persons after the ninety day removal period under an order of supervision, which necessarily entails a finding by Federal Respondents that such persons are not a danger to the community or a flight risk. *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 169 (W.D.N.Y. 2025) (citing 8 C.F.R. § 241.4(d)-(f)).

Here, Petitioner is similarly situated to persons subject to mandatory detention under Section 1231(a) but released on an order of supervision pursuant to DHS regulation 8 C.F.R. § 241.4. Like Petitioner, individuals released under 8 C.F.R. § 241.4 enjoy a (potentially lengthy) period of freedom following an individualized determination that they do not pose a flight risk or danger.[1] Because of this determination, DHS does not have carte blanche to revoke orders of supervision. Rather, the requirements laid out in Section 241.4 were "intended to provide . . . due process protections to [noncitizens] following the removal period as they are considered for

---

[1]    This is a particularly adept comparison because "[t]he Service may release an alien under an order of supervision under § 241.4 if it determines that the alien would not pose a danger to the public or a risk of flight, without regard to the likelihood of the [noncitizen's] removal in the reasonably foreseeable future," 8 C.F.R. § 241.13, and it is not clear that likelihood of removability was considered at Petitioner's Section 1226(a) bond hearing.

continued detention, release, and then possible revocation of release[.]" *Santamaria Orellana v. Baker*, 2025 WL 244087, at \*6 (D. Md. Aug. 25, 2025); *Constantinovici v. Bondi*, 806 F. Supp. 3d 1155, 1163 (S.D. Cal. 2025). To revoke release under Section 241.4(l)(2), a qualifying senior official must determine that (i) the purposes of release have been served; (ii) the alien violated any condition of release; (iii) it is appropriate to enforce a removal order or to commence removal proceedings against an alien; or (iv) the conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate. Federal Respondents must also provide adequate notice of the reasons for revocation and an opportunity to respond. 8 C.F.R. § 241.4(l)(1); *Perez-Escobar v. Moniz*, 792 F. Supp. 3d 224, 225–26 (D. Md. 2025) (cited by *Miralda-Lopez v. Lyons, et al*, No. 1:26-cv-317-MSN-IDD (E.D. Va. Mar. 11, 2026) (slip op.); *Gatshetshiladze v. Lyons et al*, No. 1:25-cv-2405-LMB-IDD (E.D. Va. Mar. 4, 2026) (slip op.)); *Santamaria Orellana*, 2025 WL 244087, at \*5, 6; *Constantinovici*, 806 F. Supp. 3d at 1165.

As this Court and others within this judicial district and the Fourth Circuit have recently observed, the edicts of Section 241.4 are "not merely housekeeping requirement[s]" to be brushed aside but are fundamental to "ensur[ing] the fair processing of an action affecting an individual." *Miralda-Lopez*, slip op. at 7; *Serpas v. Simon, et al*, No. 1:25-cv-2369-AJT-WBP (E.D. Va. Feb. 3, 2026) (slip op.); *Santamaria Orellana*, 2025 WL 244087, at \*6. In light of Petitioner's liberty interest, the substantial risk that his detention does not serve the purposes of civil immigration such that he is erroneously deprived of that interest, and the minimal burden imposed on Federal Respondents, the Court finds that on balance, procedural due process requires that Federal Respondents observe Section 241.4 in re-detaining Petitioner. *Cf. Santamaria Orellana*, 2025 WL 244087, at \*5 ("based on the known facts . . . [Petitioner] was necessarily released pursuant to . . . 8 U.S.C. § 1231(a)(6) and was therefore subject to the requirements of 8 C.F.R. § 241.4, which

on their face apply to decisions to release and revoke release, regardless of whether the release was based on a formal order of supervision"). On the record before the Court, it appears that Petitioner was not afforded any due process but was rather arrested without explanation or opportunity to respond. For these reasons, the Petition will be GRANTED and Petitioner must be immediately released.

\* \* \*

Lastly, as a separate matter, the Court addresses the issue of Petitioner's counsel Inderjit Bhargava's conduct in this and other recently filed habeas actions. The Petition filed by attorney Bhargava on February 5, 2026 contended that Petitioner was being improperly detained by Federal Respondents pursuant to 8 U.S.C. § 1225(b)(2)(A) on the basis of policy and the Board of Immigration Appeals' decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). Petition ¶ 3, 15. In terms of facts regarding Petitioner, the Petition stated that he was a citizen of El Salvador, had resided in the United States since 2015, was being detained at Farmville Detention Center, and was in standard removal proceedings pursuant to charges under 8 U.S.C. § 1182(a)(6)(A)(i). *Id.* ¶¶ 15, 45, 46. Accordingly, the Court entered an order on February 12, 2026 indicating that "the factual circumstances and legal issues presented in this Petition are materially identical to those presented in other recently filed and adjudicated habeas petitions addressing the propriety of mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)," and directed Federal Respondents to file a responsive pleading (and Petitioner to reply) on an expedited basis. ECF 2. Only when Federal Respondents opposed the Petition on February 17, 2026 did Petitioner's full immigration history become apparent, as did the nature of his detention pursuant to Section 1231. ECF 4. Petitioner, by attorney Bhargava, did not contest the additional facts or legal framework that the Federal Respondents put forth but rather made a general argument regarding Petitioner's

7

re-detention without process. ECF 5. This is all to say that the original Petition bears little, if any relevance to Petitioner's detention.

The pattern here is one that has played out repeatedly in petitions brought by attorney Bhargava. By this Court's count, attorney Bhargava has filed no fewer than eighteen petitions in this district that were ultimately revealed to concern materially different or additional facts or law than initially presented. *Divafkan v. Lyons, et al*, No. 1:25-cv-2242-AJT-LRV; *Pineda-Berrios v. Lyons, et al*, No. 1:25-cv-2332-LMB-LRV; *Gatshetshiladze v. Lyons, et al*, No. 1:25-cv-2405-LMB-IDD; *Omari v. Lyons, et al*, No. 1:25-cv-2483-MSN-WBP; *Lemus Ramirez v. Lyons, et al*, No. 1:26-cv-34-AJT-WBP; *Gulov v. Lyons, et al*, No. 1:26-cv-124-LMB-WBP; *Regalado Ramirez v. Lyons, et al*, No. 1:26-cv-175-RDA-IDD (E.D. Va. Feb. 2, 2026) (slip op.) (denying petition because petitioner received bond hearing previously granted in *Regalado Ramirez v. Simon, et al*, No. 1:25-cv-2497-RDA-LRV, but was denied bond by IJ—a fact that was not presented in either the original or amended petitions); *Monroy Mercado v. Lyons, et al*, No. 1:26-cv-217-RDA-LRV; *Doan v. Lyons, et al*, No. 1:26-cv-222-RDA-WEF; *Najera v. Lyons, et al*, No. 1:26-cv-283-RDA-LRV; *Miralda-Lopez v. Lyons, et al*, No. 1:26-cv-317-MSN-IDD; *Villalobos Flores v. Lyons, et al*, No. 1:26-cv-341-LMB-IDD; *Erine v. Lyons, et al*, No. 1:26-cv-369-PTG-WBP; *Kumar v. Lyons, et al*, No. 1:26-cv-408-PTG-LRV; *Mogollon v. Lyons et al*, No. 1:26-cv-441-LMB-WEF; *Jin Jiang v. Lyons, et al*, No. 1:26-cv-450-LMB-WBP; *Orantes Interiano v. Lyons, et al*, No. 1:26-cv-590-RDA-WBP (same as *Regalado Ramirez*); *Cartegena Gonzales v. Lyons et al*, No. 1:26-cv-660-PTG-WEF (similar to *Orantes Interiano* and *Regalado Ramirez*).

The problem flows from the fact that attorney Bhargava appears to have filed almost-identical boilerplate petitions asserting a Section 1225(b)(2) issue, devoid of anything more than the barest of facts, in nearly every one of the fifty-seven habeas actions she has brought in this

district. When there is undisputably not a Section 1225(b)(2) issue in hand, this practice is unacceptable and frustrates the ability of the Court to determine the permissibility of petitioners' detention. As Judge Brinkema stated in admonishing attorney Bhargava and dismissing a petition without prejudice based on this failure, "petitioner bears the burden of proving that he is entitled to the relief sought. And petitioner's counsel has a duty to disclose to the Court in the Petition facts that might be relevant to the resolution of petitioner's claims for relief—including whether petitioner is subject to a final order of removal. To evaluate whether petitioner is lawfully detained, counsel must provide the Court with a factually accurate habeas petition, a feasible request for relief, and citations to legal authority that support that request." *Jin Jiang*, ECF 9, No. 1:26-cv-450-LMB-WBP (E.D. Va. Mar. 9, 2026).

This Court agrees. The Court understands that immigration attorneys often face challenging circumstances in representing their clients. But in a habeas action, only immigration attorneys may serve as advocates for their clients' interests. *Murillo-Mejia*, ECF 5, No. 1:26-cv-552-LMB-LRV (E.D. Va. Mar. 17, 2026) ("It is insufficient to file a standard habeas petition and then expect the Court will do petitioner's work for him[.]"). And an attorney's basic professional and ethical responsibilities to her client and the Court require diligent investigation and forthright presentation of the pertinent facts and law. Anything less at the very least wastes the time and resources of all parties involved—including that of the Petitioner, whose liberty is at stake in a habeas action.[2] Accordingly, attorney Bhargava is forewarned that continued filing of habeas

---

[2]      Shortly after the Court denied the Petition without prejudice on Friday, March 13, 2026, because attorney Bhargava failed to inform the Court by Monday, March 9, 2026, of whether Petitioner timely appealed the IJ's denial of withholding relief to the BIA, ECF 6, 7, attorney Bhargava called chambers to request expedited processing of her Emergency Motion to Reopen and Reinstate Petition (ECF 8) because "they act quickly on these things." The Court understood this statement as a suggestion that Federal Respondents were likely to immediately deport Petitioner absent an administrative stay. Notwithstanding that Petitioner was unlikely to be immediately deported as a result of the Court's dismissal of the Petition because he is detained pursuant to Section 1231 during the pendency of his BIA appeal (which was timely filed, according to the Emergency Motion, ECF 8-1), this episode is illustrative of the seriousness of the situation at hand.

petitions untethered from the circumstances of a client's case may result in consequences including dismissal of such petitions without prejudice or further disciplinary action.

### III.    CONCLUSION

For all the reasons stated above, the Petition (ECF 1) is GRANTED, and it is hereby

ORDERED that no later than 4:00 p.m. on March 24, 2026, Federal Respondents RELEASE Petitioner from detention with all of his personal property subject to the conditions of his existing bond; and it is further

ORDERED that the Federal Respondents, along with their officers, agents, servants, employees, attorneys, successors, and assigns, and all persons acting in concert with them—are ENJOINED from re-detaining Petitioner unless (1) he commits a violation of any federal, state, or local law; (2) he fails to comply with the conditions of bond; or (3) done so in compliance with the requirements of 8 C.F.R. § 241.4; and it is further

ORDERED that Federal Respondents file a status report with this Court within three (3) days stating whether Petitioner has been released and if not, why not.

### IT IS SO ORDERED.

The Clerk is directed to enter judgment in Petitioner's favor pursuant to Federal Rule of Civil Procedure 58, forward copies of this Order to counsel of record, and close this civil action.

/s/
_____
Michael S. Nachmanoff
United States District Judge

March 23, 2026
Alexandria, Virginia